Case 2:04-cv-00279-EFS    Document 92    Filed 07/12/05

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL 1 2 2005

JAMES R. LARSEN, CLERK
_____ DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JAY S. JUMP,

        Plaintiff,

vs.

DUNCAN J. McNEIL,

        Defendant.

No.  CV-04-279-AAM

**ORDER IMPOSING CIVIL CONTEMPT SANCTION**

A contempt hearing was held on July 8, 2005 in Spokane. Plaintiff Jay Jump, Esq., appeared pro se, as did defendant Duncan McNeil. The court heard argument from both Mr. Jump and Mr. McNeil.

## I. BACKGROUND

This action originated from a Chapter 11 bankruptcy petition filed in the United States Bankruptcy Court for the Central District of California, Los Angeles Division. Reorganized Debtor, Broadway Buildings, II L.P., emerged from the bankruptcy and defendant Duncan McNeil (McNeil) was appointed the post-confirmation General Manager. The company is located in Spokane and Mr. McNeil resides there as well.

On January 3, 2002, the California bankruptcy court entered an order compelling the

**ORDER IMPOSING
CIVIL CONTEMPT SANCTION-**      1

examination of McNeil pursuant to Federal Bankruptcy Rule (BR) 2004 and requiring the production of specific documents to Mr. Jump.  Mr. Jump at one time represented the Broadway Buildings bankruptcy estate and the bankruptcy court in June 2000 awarded him $94,000 in attorney's fees as an administrative claimant of the estate.  On January 15, 2002, McNeil attended the examination in Spokane and refused to produce documents as ordered.[1]

On March 8, 2002, the California bankruptcy court entered an Order of Civil Contempt and ordered McNeil and his attorney (Carlos Valero) to comply with the January 3, 2002, order.  The court ordered a $1000 per day sanction for failure to comply.

On July 28, 2003, the California bankruptcy court issued a "Further Order In Aid Of Enforcement Of Order Of Civil Contempt" which also constituted a bench warrant, authorizing the U.S. Marshal to apprehend and arrest McNeil at "any location and at any time, using all reasonably necessary force."

On April 29, 2004, McNeil, who was in jail for unrelated Spokane County Superior Court criminal matters, was transferred to the U.S. Marshal pursuant to a Detainer Against an Unsentenced Prisoner, issued April 21, 2004.  On April 30, 2004, McNeil appeared before Magistrate Judge Imbrogno and was detained. (Ct. Rec. 6 in CV-04-mj-211-AAM).

A bail hearing was held on May 4, 2004, before Judge Whaley, who released McNeil from federal custody on the condition that he attend a May 10, 2004, bankruptcy examination to answer Jump's questions regarding the whereabouts of bankruptcy estate assets. (Ct. Rec. 9 in 04-mj-211-AAM).  The May 10 examination was continued until June 17, 2004. (Ct. Rec. 14 in 04-mj-211-AAM). McNeil appeared on June 17, but refused to answer any questions asked by Mr. Jump, citing attorney-client privilege.

Based on McNeil's refusal to answer questions at the June 17, 2004 examination, plaintiff Jump filed a motion for contempt on August 6, 2004.  Judge Whaley directed that a new civil case (CV-04-279-RHW now 04-279-AAM) be opened for the purpose of adjudicating the motion. (Ct.

---

[1] See transcript attached as an exhibit to McNeil's June 21, 2005 filing. (Ct. Rec. 89 at pp. 20-25).

**ORDER IMPOSING
CIVIL CONTEMPT SANCTION-**           **2**

Rec. 29 in 04-mj-211-AAM). In addition to a finding of contempt, Jump asked the court to order McNeil be (1) incarcerated until he answered questions at the bankruptcy examination, and (2) directed to pay attorney fees and costs from the June 17 examination.

On October 6, 2004, Judge Whaley granted Jump's motion. (Ct. Rec. 10 in 04-279). Judge Whaley stated in his order: "It does not appear that any attorney-client privilege exists that would prevent Plaintiff from asking Defendant questions regarding the disposal and location of various assets, nor protect Defendant from answering such questions." (Ct. Rec. 10, p. 2). Judge Whaley also found McNeil's jurisdiction argument was without merit and ordered him to appear at the courthouse on October 12, 2004 to answer the questions posed by plaintiff related to the bankruptcy proceedings. (*Id.* at 6). The issue of attorney's fees was reserved.

The U.S. Marshal Service brought McNeil from the Spokane County Jail to the examination on October 12, 2004 in the federal courthouse. McNeil was in state custody at that time. Robert D. Miller, Assistant United States Trustee, presided over the examination. McNeil refused to take an oath or answer any questions. (See Judge Whaley's October 12, 2004 "Order Setting Hearing On Defendant's Contempt Of Court," Ct. Rec. in 04-279).[2] Judge Whaley set a hearing for October 15 to determine the type of sanction to be imposed and appointed counsel for McNeil.

At the October 15, 2004, hearing, appointed counsel Karen Lindholdt asked for a continuance, which was granted, and McNeil was released from federal custody pending that hearing. The court directed the parties to brief the issues of attorney-client privilege and jurisdiction. The hearing was reset to November 4, 2004. (Ct. Rec. 19 in 04-279).

In an order dated October 22, 2004, Ms. Lindholdt was allowed to withdraw as counsel and Ed Carroll, who was representing McNeil in state court matters, was substituted as counsel. (Ct. Rec. 23 in 04-279).

On November 9, 2004, the case was reassigned to the undersigned. (Ct. Rec. 35 in 04-

---

[2] A copy of Miller's declaration relied upon by Judge Whaley is appended hereto and made part of the record.

**ORDER IMPOSING
CIVIL CONTEMPT SANCTION-**         3

279). In an order dated January 13, 2005, Mr. Carroll was allowed to withdraw as counsel. (Ct. Rec. 45 in 04-279). Beth Bollinger, Esq., was appointed as substitute counsel. (Ct. Rec. 46 in 04-279). Ms. Bollinger requested, and the court granted, an order compelling discovery of documents in Mr. Jump's possession. (Ct. Rec. 60 and 67 in 04-279).[3] In May 2005, Ms. Bollinger filed a motion to withdraw, which was granted in an order dated June 6, 2005, essentially because of McNeil's failure to cooperate with Ms. Bollinger. (Ct. Rec. 76 in 04-279).

None of McNeil's appointed counsel ever filed a brief on McNeil's behalf before being allowed to withdraw. In the order allowing Ms. Bollinger to withdraw, McNeil was directed to file any pro se brief no later than June 17 and to appear pro se at the July 8 hearing.[4] McNeil filed a response on June 21, 2005, and attached over 80 pages of exhibits. (Ct. Rec. 89 in 04-279).

A writ was issued to secure McNeil's appearance at the July 8 hearing. This was necessary because McNeil is currently incarcerated in the Spokane County Jail, serving a four year sentence handed down by the Spokane County Superior Court in early 2005 for a criminal conviction on a matter unrelated to the captioned matter.

## II. DISCUSSION

McNeil has offered nothing to dissuade this court that Judge Whaley correctly found in his

---

[3] The court is satisfied that Jump complied with the discovery order of this court and that Ms. Bollinger, McNeil's former counsel, passed on the discovery to McNeil. At least one statement McNeil made during the July 8 hearing suggested he had received the discovery from Ms. Bollinger as had been directed by this court in the order granting Bollinger's motion to withdraw as counsel.

[4] A right to counsel is not guaranteed in a civil contempt proceeding. *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 821 (4th Cir. 2004). In an abundance of caution and because McNeil's personal liberty might be at stake, Judge Whaley appointed counsel for McNeil and this court did so as well, particularly since criminal contempt began to loom as a possibility (and still does). In general, there is a right to counsel in criminal proceedings where personal liberty is at stake. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006 (1972). This court did not reappoint counsel for McNeil because it was evident that the same problems would inevitably arise between McNeil and his new counsel, and this contempt proceeding, already pending for over six months, would be delayed even further.

**ORDER IMPOSING**
**CIVIL CONTEMPT SANCTION-        4**

October 6, 2004 order that attorney-client privilege does not prevent McNeil from answering the questions tendered by Jump. Therefore, this court reaffirms Judge Whaley's finding in that regard.[5]

Likewise, McNeil has offered nothing to dissuade the court that Judge Whaley, in his October 6, 2004 order, correctly found he had jurisdiction over McNeil and the subject matter (civil contempt). Therefore, this court reaffirms that finding as well. There are, however, additional reasons why this court has jurisdiction, both personal and subject matter.

There is no question that a bankruptcy court has civil contempt authority. *In re Dyer*, 322 F.3d 1178, 1189-90 (9th Cir. 2003), citing 11 U.S.C. §105. It follows that a bankruptcy court in aid of its civil contempt authority, may issue bench warrants for arrest of individuals who do not comply with the court's orders. See generally, *U.S. v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548 (1983); *SEC v. International Swiss Investments Corp.*, 895 F.2d 1272 (9th Cir. 1990). McNeil was arrested pursuant to the warrant issued by the California bankruptcy court, but Judge Whaley released him from federal custody pursuant to an order directing McNeil to show up at a BR 2004 examination originally scheduled for May 10 and then continued to June 17. At that point, the California bankruptcy court arrest warrant was no longer an issue.

McNeil showed up at the June 17 examination and it appears he did so voluntarily, although he did not answer the questions asked, citing attorney-client privilege. There is nothing in the record to indicate that for the June 17 examination, it was necessary for Judge Whaley to issue a writ of habeas ad testificandum to take McNeil out of state custody temporarily and have him transported by the U.S. Marshal Service to the June 17 examination. The fact that McNeil resides in Spokane and voluntarily showed up for the June 17 examination further establishes this court's personal jurisdiction over McNeil. And, with regard to the subject matter jurisdiction of this court, it is noted that Judge Whaley's October 6, 2004 "Order Granting Plaintiff's Motion For Contempt" was issued because of McNeil's failure to comply with **Judge Whaley's** May 4, 2004

---

[5] While McNeil asserts he has answered all of Jump's questions, the falsity of this is most clearly evidenced by McNeil's claim of the attorney-client privilege as a basis for not answering the questions.

**ORDER IMPOSING
CIVIL CONTEMPT SANCTION-** 5

order directing McNeil to attend the BR 2004 examination, initially scheduled for May 10 and then continued to June 17.[6] Not only did McNeil fail to comply with the May 4, 2004 order, he also failed to comply with Judge Whaley's October 6, 2004 order directing him to attend a BR 2004 examination on October 12, 2004 and answer all questions asked of him by Mr. Jump. While McNeil attended the examination pursuant to a writ of habeas corpus ad testificandum issued by Judge Whaley (Ct. Rec. 12 in 04-279), as noted above, he refused to answer any questions. The specific civil contempt at issue here is McNeil's failure to comply with orders of the United States District Court for the Eastern District of Washington, not an order from the United States Bankruptcy Court for the Central District of California. McNeil simply cannot deny the contempt authority of this court.

## III. CONCLUSION

Plaintiff Jump has met his burden of showing by clear and convincing evidence that McNeil has violated specific and definite orders of the United States District Court for the Eastern District of Washington. *In re Dyer*, 322 F.3d at 1190-91. McNeil has not met his burden of showing a reasonable basis for his failure to comply with those orders. *Federal Trade Comm'n v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004). McNeil is in civil contempt.

**Upon the expiration of his current term of incarceration imposed by the Spokane County Superior Court, McNeil shall remain incarcerated in federal custody until such time as he chooses to answer the questions for which Mr. Jump seeks answers in the BR 2004 examination.**[7] **Therefore, this order shall serve as a federal detainer upon expiration of McNeil's state custody term.** This is a civil contempt sanction because McNeil retains an

---

[6] In his October 6, 2004 order, Judge Whaley refers to it as his May 5 order, but the order was signed and filed on May 4.

[7] Jump might consider supplying McNeil with a written list of questions so McNeil can anticipate the specific questions he will be asked at the examination. This, of course, would not be in lieu of the oral examination, nor would Jump be precluded from asking additional, related questions at the examination, beyond what is contained in a written list.

**ORDER IMPOSING
CIVIL CONTEMPT SANCTION-      6**

opportunity to purge himself of the contempt. The sanction is conditional. McNeil "carries the keys of his prison in his own pocket." *United Mine Workers v. Bagwell*, 512 U.S. 812, 828 (1994)(quoting *In re Nevitt*, 117 F. 448, 451 (8th Cir. 1902).

**IT IS SO ORDERED**. The District Executive shall forward a copy of this order to plaintiff (McNeil), to defendant Jump, and to the U.S. Marshal Service.

DATED this 12 of July, 2005.

/s/ Alan A. McDonald
ALAN A. McDONALD
Senior United States District Judge

**ORDER IMPOSING
CIVIL CONTEMPT SANCTION-** 7

*was NOT filed - but Judge Whaley refers to it in his Oct. 12 order.*

## Declaration of Robert D. Miller Jr. Regarding Examination of Duncan J. McNeil on October 12, 2004

I declare under the penalty of perjury:

1. I am Robert D. Miller Jr., Assistant United States Trustee for the Eastern District of Washington at Spokane.

2. On October 12, 2004, at approximately 12:45 pm, I presided at a FRBP 2004 Examination of Duncan J. McNeil.

3. The examination was held on the Eighth Floor of the Federal Building in Spokane in a holding cell maintained by the United States Marshal.

4. I was present in the cell, along with Duncan J. McNeil and Jay Jump, the attorney who initiated the Rule 2004 examination and procured the U.S. District Court order requiring Mr. McNeil to appear and answer questions.

5. I asked Mr. McNeil if he were willing to take an oath and answer Mr. Jump's questions.

6. Mr. McNeil responded by asking to make a statement. I agreed to let him make a statement. He gave a statement lasting approximately 10 or 15 minutes, alleging that the Rule 2004 proceeding and order and various other proceedings and orders leading up to the current proceeding were illegal and void. He also accused Mr. Jump and me of acting illegally and giving false statements.

7. When Mr. McNeil was finished I again asked him if he was willing to take the oath and answer questions. He started in again on the same accusations he had made in his statement. Mr. Jump asked him for a "yes" or "no" and he refused. I told him we would take his answer as a "no" unless he declared to the contrary. He did not. Mr. Jump and I left.

8. On several occasions during the attempted examination, Mr. McNeil personally insulted Mr. Jump. He did not use profanity, but

commented unfavorably on Mr. Jump's personal appearance. In my opinion, Mr. McNeil's demeanor was hostile and became increasingly so the longer we were there.

Dated: October 12, 2004

Robert D. Miller Jr.
Assistant U.S. Trustee